

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIIA I. O'DONNELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHICAGO ZOOLOGICAL SOCIETY, )<br>)<br>Defendant. ) | 04 C 6952<br><br>Honorable Charles R. Norgle |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant Chicago Zoological Society's Motion for Summary Judgment. For the following reasons, the Motion is granted.

### I. BACKGROUND[1]

**A. Facts**

Plaintiff Riia I. O'Donnell ("O'Donnell") is a former Senior Human Resources Generalist of Defendant Chicago Zoological Society ("the Society"). The Society operates the Brookfield Zoo, located in Brookfield, Illinois. The Society hired O'Donnell in 1994, and O'Donnell worked at the Society until her termination in 2001. During O'Donnell's tenure at the Society, her supervisor was Sandra Dornhecker ("Dornhecker"). Following a series of negative reviews of O'Donnell's work, Dornhecker terminated O'Donnell's employment at the Society on May 3, 2001.

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements. The court notes disputed facts within the text.

1

Approximately one year prior to O'Donnell's termination, she submitted a Leave of Absence Form to the Society's Human Resources department, requesting intermittent leave pursuant to the Family and Medical Leave Act ("FMLA") for the purposes of receiving fertility treatments. O'Donnell's physician indicated on this form only that O'Donnell was experiencing "Ovulation Dysfunction." The form contains no other details regarding the nature of O'Donnell's condition, or the nature of any treatments she would require for this condition. O'Donnell did not submit this form to Dornhecker, and Dornhecker testified that she never saw this form until after O'Donnell filed her discrimination charge. Instead, O'Donnell submitted this form to a benefits coordinator in the Human Resources department.

O'Donnell testified that she suffered from various symptoms as a result of her fertility treatments, including backaches, swelling, bloating, and discomfort. In addition, O'Donnell was unable to perform heavy lifting, and was restricted from walking long distances. However, O'Donnell admits that she was able to perform her ordinary job functions and daily life activities at all times. Moreover, it is undisputed that O'Donnell never discussed the specific nature of her medical condition or treatment with Dornhecker or any other employee of the Society.

## B. Procedural History

O'Donnell filed her Amended Complaint on May 10, 2005, alleging violations of the FMLA and the Americans with Disabilities Act ("ADA"). O'Donnell's FMLA claim, however, is beyond the applicable statute of limitations. See 29 U.S.C. § 2617 (c) (1),(2) (providing that actions for willful violations of the FMLA must be brought within 3 years of the last event constituting an alleged violation). O'Donnell's claims are therefore brought only pursuant to the ADA.

The Society filed its Motion for Summary Judgment on May 12, 2006. The Society asserts, *inter alia*, that since the individual who made the decision to terminate O'Donnell had no knowledge of O'Donnell's alleged disability, it is entitled to summary judgment. O'Donnell filed her Response on June 5, 2006. The Society filed its Reply on June 19, 2006. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When the defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that support the plaintiff's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. The ADA and Infertility

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability . . . in regard to . . . discharge of employees . . . .". 42 U.S.C. § 12112(a). In order to establish a prima facie case of disability discrimination, a plaintiff "must show that he is disabled within the meaning of the ADA, that he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and that he suffered from an adverse employment action because of his disability." Nese v. Julian Nordic Constr. Co., 405 F.3d 638, 641 (7th Cir. 2005); Dyke v. O'Neal Steel, Inc., 327 F.3d 628, 631 (7th Cir. 2003). If a plaintiff can establish a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Dvorak v. Mostardi Platt Assocs., 289 F.3d 479, 485 (7th Cir. 2002) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If the employer articulates such a reason, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the employer's proffered reason was a pretext for intentional discrimination." Id.

4

In this case, the parties do not dispute that O'Donnell's infertility constitutes a disability under the ADA. See Pacourek v. Inland Steel Co., 858 F. Supp. 1393, 1404-05 (N.D. Ill. 1994) (finding that plaintiff's infertility was a condition substantially limiting a major life activity, namely reproduction, and was therefore a disability under the ADA); see also LaPorta v. Wal-Mart Stores, Inc., 163 F. Supp. 2d 758, 765-66 (W.D. Mich. 2001). Nor do the parties dispute whether O'Donnell's termination was an adverse employment action. O'Donnell, however, cannot show that she was terminated because of her disability.[2]

## C. There is No Genuine Issue of Material Fact as to whether O'Donnell was Terminated because of Her Disability

In this case, the only evidence indicating that O'Donnell made any effort to inform the Society of her disability is a two-word entry in her Leave of Absence Form. As the court has already noted, O'Donnell's physician made the following entry on this form: "Ovulation Dysfunction." Dornhecker testified that she never saw this form until after O'Donnell had filed a discrimination charge. There is no explanation on this form as to the nature of Ovulation Dysfunction, its symptoms, or any potential treatment regimens O'Donnell might have to undergo. O'Donnell was able to perform ordinary functions in both her job and her daily life. More importantly, O'Donnell admits that she never discussed her condition with Dornhecker or any other employees of the Society.

The undisputed facts therefore demonstrate that O'Donnell never alerted the decision maker in this case, Dornhecker, to her disability. O'Donnell, however, asserts that there is an

---

[2] Because the court finds that O'Donnell has presented no evidence that she was terminated because of her disability, the court does not reach the issue of whether O'Donnell was qualified to perform the essential functions of her job.

5

issue of material fact as to whether Dornhecker should have known that O'Donnell was disabled, because (1) Dornhecker was aware that O'Donnell had taken time off on an intermittent basis over a one year period, (2) Dornhecker "knew" that O'Donnell was receiving "injections" of some sort, (3) O'Donnell suffered from the above noted symptoms, and (4) Dornhecker, in her capacity as O'Donnell's supervisor, must have reviewed O'Donnell's Leave of Absence Form. Such speculation regarding what Dornhecker should have known does nothing to assist O'Donnell in meeting her burden at the summary judgment stage. See Hamm v. Runyon, 51 F.3d 721, 725 (7th Cir. 1995) ("In the end [plaintiff] has demonstrated no evidence from which it would be reasonable to conclude that [the decision maker] knew of [plaintiff's] arthritis or that, if he had, he perceived the affliction as disabling. [Plaintiff] invites us to draw inferences that are merely speculative."); see also Hedberg v. Ind. Bell Telephone Co., Inc., 47 F.3d 928, 931-32 (7th Cir. 1995) ("speculation does not meet a party's burden of producing some defense to a summary judgment motion.").

Because the undisputed facts in this case demonstrate that the decision maker, Dornhecker, never knew of O'Donnell's disability, O'Donnell cannot show that she was terminated because of her disability.

> We think that an employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability. This is supported both by simple logic and by the conclusion of other courts that have considered analogous issues. At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee "because of" a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee "because of" some other reason.

Hedberg, 47 F.3d at 932; see also Van Stan v. Fancy Colours & Co., 125 F.3d 563, 571 (7th Cir. 1997) ("an employer cannot be liable under the ADA for firing an employee because of the

effects of a disability when the decision maker has no knowledge of the disability . . . ."); Adkins v. Briggs & Stratton Corp., 159 F.3d 306, 307 (7th Cir. 1998).

Because the court has determined that there is no genuine issue of material fact as to whether the decision maker was aware that O'Donnell was disabled, the court ends its analysis of this case here. O'Donnell has presented the court with no evidence that she was terminated because of her disability. The Society therefore cannot be liable under the ADA for O'Donnell's termination.

### III. CONCLUSION

For the foregoing reasons, Defendant Chicago Zoological Society's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: July 25, 2006